Second Generation v. Pelham          CV-00-90-B      05/21/02

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


**Second Generation Properties, L.P.**

     v.                                      Civil No. 00-90-B
                                             Opinion No. 2002 DNH 101
**Town of Pelham**


**MEMORANDUM AND ORDER**


     Second Generation Properties, L.P., challenges a decision by

Pelham's Zoning Board of Adjustment ("ZBA") denying it a variance

to use its property as the site for a 250-foot tall wireless

telecommunications tower.  Second Generation argues that the

ZBA's decision violates the Telecommunications Act of 1996, Pub.

L. 104-104, ("TCA") because:  it has "the effect of prohibiting

the provision of personal wireless services" in an area of town

not served by other providers, 47 U.S.C.A. § 332 (c)(B)(i)(II);

and (2) it is not supported by "substantial evidence," 47

U.S.C.A. § 332(c)(B)(iii).[1]

---

     [1] Second Generation has abandoned its additional claims
that the decision unreasonably discriminates among providers of
telecommunication services, see 47 U.S.C.A. § 332(c)(7)(B)(1)(I),

## STANDARD OF REVIEW

In a non-jury case such as this, where the parties have filed cross-motions for summary judgment and the material facts are undisputed, the case is submitted and the court must determine the inferences to be drawn from the undisputed facts. See Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 643-44 (1st Cir. 2000). The parties therefore agree that I may resolve the case on their submissions without a trial.

## FACTS

Pelham adopted a Personal Wireless Services Ordinance in 1999. The ordinance authorizes the Planning Board to issue conditional use permits for the construction of telecommunications towers in a new "Telecommunications Overlay Zone." The Overlay Zone includes only areas currently zoned for industrial and commercial uses. A variance must be obtained from the ZBA to construct a tower in any other zoning district.

Second Generation owns a 90-acre wooded lot at the top of Spaulding Hill in Pelham. Because its property is located in a

and that the decision is improper because it is not "in writing." 47 U.S.C.A. § 332 (C)(7)(B)(iii).

residential zone, Second Generation cannot construct a tele-communications tower on the property without a variance. Rather than seek such a variance, however, Second Generation initially filed suit in this court in February 2000, arguing that the Personal Wireless Services Ordinance violates the TCA. While the action was pending, Second Generation changed its strategy and submitted a proposal to the ZBA to construct a 250-foot tall telecommunications tower on its property. In response, the court stayed the case until the ZBA decided whether to issue the variance.

The ZBA refused to approve the variance because Second Generation failed to establish that it would suffer unnecessary hardship, one of five requirements for a variance. See Olszak v. Town of New Hampton, 139 N.H. 723, 725 (1995). Shortly after the ZBA issued its decision, however, the New Hampshire Supreme Court released an opinion making the unnecessary hardship requirement substantially less restrictive. See Simplex Techs., Inc. v. Town of Newington, 145 N.H. 727, 732 (2001). Because the ZBA had based its ruling on an outdated definition of unnecessary hard-ship, this court remanded the matter to the ZBA and instructed it

to re-examine its determination in light of the supreme court's decision.

Second Generation argued on remand that the ZBA should grant it a variance because its proposal would fill a significant gap in wireless service in Pelham without adversely affecting surrounding properties. It attempted to prove that a significant gap in wireless coverage existed by presenting a "propagation study" that purported to show that existing and potential future telecommunications towers located in the Telecommunications Overlay Zone could not effectively serve a section of Route 128 in Pelham that experienced traffic of up to 10,000 cars per day.[2] It also produced testimony from an expert witness who claimed that five of the six carriers licensed to provide wireless service in New Hampshire experienced gaps in wireless coverage in the Route 128 area. Finally, it offered anecdotal evidence from witnesses who claimed that a gap in wireless coverage existed.

Second Generation also produced evidence at the hearing to support its contention that the proposed tower would have only a

---

[2] Pelham's interim planning director disputed the traffic count and suggested that as few as half as many cars traveled through the alleged gap area on a daily basis.

minimal impact on surrounding properties. It claimed that the tower would not be visible to adjacent landowners because its property was heavily wooded and the tower would be 1,000 feet from the nearest residence. It asserted that a balloon test demonstrated that only six residences in the entire town would have any view of the tower and only the top 150 feet of the tower would be visible above the tree line. It produced a study suggesting that wireless telecommunications towers do not adversely affect the value of surrounding properties. Finally, it claimed that the new tower would generate only a limited amount of additional traffic.

The ZBA found this evidence unpersuasive. On September 27, 2001, it issued a written decision denying Second Generation's request for a variance.

## DISCUSSION

Second Generation claims that the ZBA's decision violates the TCA because it perpetuates a significant gap in wireless coverage and is not supported by substantial evidence. I address each claim in turn.

## A.   Effective Prohibition

The TCA provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C.A. § 332(c)(7)(B)(i)(II).  I review a claim under this provision de novo, based on the record developed by the local land use authority and any other evidence submitted by the parties in support of their motions.  See Town of Amherst, N.H. v. Omnipoint Communications, 173 F.3d 9, 16 (1st Cir. 1999).

The Personal Wireless Services Ordinance does not on its face prohibit the provision of wireless services in Pelham because it both authorizes the town's Planning Board to grant conditional use permits to construct telecommunications towers within the Telecommunications Overlay Zone and allows the ZBA to grant variances to build towers in other zoning districts.  Nor has Second Generation offered persuasive evidence demonstrating either that the ordinance is a sham concealing an intention on the part of town officials to ban the construction of new towers

or that the ordinance is so difficult to comply with that it amounts to an effective ban.[3]  Thus, Second Generation's effective prohibition claim depends upon its contention that the ZBA's denial of its request for a variance amounts to an effective prohibition of wireless service in the area that the proposed tower is intended to serve.

A denial of a single request to construct a telecommunications tower at a particular location can constitute an effective prohibition of wireless service.  See Amherst, 173 F.3d at 14.  A claim based on a single denial has two elements.  First, the applicant must establish that the proposed tower will fill a significant gap in wireless service.  See Nextel West Corp. v. Unity Township, 282 F.3d 257, 265 (3d Cir. 2001).  Obviously, mere "dead spots," which Federal Communication

---

[3]  Second Generation does claim that the ZBA recently denied another applicant's request for a variance to construct a telecommunications tower at a different site.  Evidence that a local land use body is using its discretionary authority to reject all feasible means of filling a significant gap in wireless coverage likely would establish a violation of the TCA's effective prohibition provision.  As I explain in greater detail below, however, Second Generation has not persuaded me either that a significant gap in coverage exists or that the ZBA is misusing its power to prohibit telecommunications service providers from filling the coverage gap.

Commission regulations define as "small areas within a service area where the field strength is lower than the minimum level for reliable service," 47 C.F.R. § 22.99, will not qualify as significant gaps in service. See 360° Communications Co. v. Bd. of Supervisors of Albemarle County, 211 F.3d 79, 87 (4th Cir. 2000). Moreover, a gap in service will be deemed to be significant only if the area in question is not served by any other provider.[4] See Sprint Spectrum L.P. v. Willoth, 176 F.3d 630, 643 (2d Cir. 1999); accord ATP Pittsburg Ltd. P'Ship v. Penn. Township, Butler County, 196 F.3d 469, 479-80 (3d Cir. 1999).

Even if an individual permit denial will leave a significant gap in wireless service, the denial will not amount to an effective prohibition unless the gap cannot be filled by other means. Although courts in other jurisdictions have expressed this requirement in different ways, compare ATP Pittsburg Ltd.

---

[4] If an area is being served by one or more carriers but a local land use authority improperly denies an application by another carrier to serve the same area, the dissatisfied carrier may have a claim based on the TCA's prohibition of "unreasonable discrimination among providers." 47 U.S.C.A. §332(c)(7)(B)(1)(I). As I mentioned previously, however, Second Generation has abandoned its discrimination claim.

-8-

P'Ship, 196 F.3d at 480 (denial of permit is an effective prohibition if site is "the least intrusive means to close a significant gap in service") and Sprint Spectrum L.P., 176 F.3d at 643 (same), with 360° Communications Co., 211 F.3d at 87 (rejecting least intrusive means test), the First Circuit has held that "the burden for the carrier invoking the [effective prohibition] provision is a heavy one:  to show from language or activities not just that this application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time to even try," Amherst, 173 F.3d at 14 (emphasis in original); see also Southwestern Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 63 (1st Cir. 2001) (applicant must demonstrate that alternate sites are not available).

Second Generation has not met its burden of proof with respect to either element of its effective prohibition claim. Although Second Generation's propagation study proves that none of the existing telecommunications towers in Pelham is able to provide reliable wireless service to a significant section of Route 128, the study does not consider whether the area in question is being adequately served by towers in nearby towns. This deficiency is significant because Second Generation's own

expert concedes that: (1) he was able to obtain service in the alleged gap area on his U.S. Cellular phone by accessing a tower operated by another carrier in Massachusetts[5]; and (2) he does not know whether Nextel, a licensed New Hampshire wireless carrier, is able to provide service in the alleged gap area. Because Second Generation concedes that at least one carrier is able to provide service to the alleged gap area and has produced no evidence as to whether another licensed carrier is providing similar service, it has not proved that a significant gap in wireless coverage exists in the Route 128 area.

Second Generation also has failed to prove that other reasonable efforts to fill any gap in wireless coverage are likely to be fruitless. Second Generation attempted in its propagation study to demonstrate that the alleged coverage gap could not be filled by building new towers in the Telecommunications Overlay Zone. The study, however, does not consider the possibility that a carrier might be able to serve the area by

---

[5] The tower in question is part of the Cingular Network. Although Cingular is not licensed to provide wireless service in New Hampshire, Second Generation has not explained why this fact is relevant to the issue of whether a significant gap in wireless coverage exists in the Route 128 area.

obtaining a waiver of the ordinance's 199-feet tower height limitation and building a taller tower in the overlay zone. Nor has Second Generation attempted to determine whether towers at other feasible sites outside the overlay zone could provide the necessary service. Because Second Generation has failed to demonstrate either that other feasible sites are unavailable or that, if such sites are available, the ZBA is unlikely to grant a variance to allow towers to be built on one or more of these sites, it has failed to prove its effective prohibition claim.

B.   **Substantial Evidence**

Second Generation also argues that Pelham violated the TCA's substantial evidence requirement. Section 332(c)(7)(B)(iii) states: "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless services facilities shall be in writing and supported by substantial evidence contained in a written record." The record, for purposes of making a substantial evidence determination, consists of the record that was presented to the local authority. See Amherst, 173 F.3d at 168 n.7.

Substantial evidence review is narrow, focusing on whether the record includes "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Southwestern Bell 244 F.3d at 58 (quoting Penobscot Air Servs., Ltd. v. F.A.A., 164 F.3d 713, 718 (1st Cir. 1999)). Contradictory evidence in the record does not preclude a finding that substantial evidence supports a zoning decision. See id. A decision is not supported by substantial evidence, however, if "the record clearly precludes the decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence." Id. at 59 (internal quotations omitted). The burden of demonstrating that a decision is not supported by substantial evidence remains with the applicant. See Southwestern Bell, 244 F.3d at 63.

At issue is the ZBA's denial of Second Generation's request for a variance. To obtain a variance, an applicant must prove:

> (1) a denial of the variance would result in unnecessary hardship to the applicant; (2) the surrounding properties would suffer no diminution in value; (3) the proposed use could not be contrary to the spirit of the ordinance; (4) granting the variance would benefit the public interest; and (5) granting the variance would do substantial justice.

Olsak, 139 N.H. at 725. The burden of proof as to all five requirements rests with the applicant. See id.

I focus my analysis on the ZBA's unnecessary hardship determination. Until recently, the New Hampshire Supreme Court consistently construed the unnecessary hardship requirement to call for proof that "the deprivation resulting from the application of the ordinance must be so great as to effectively prevent the owner from making any reasonable use of the land," Grey Rocks Land Trust v. Hebron, 136 N.H. 239, 242 (1992) (quoting Governor's Island Club v. Town of Gilford, 124 N.H. 126, 130 (1983)). Last year, however, the New Hampshire Supreme Court altered its interpretation, holding in Simplex Techs., Inc., 145 N.H. 727, that:

> [h]enceforth, applicants for a variance may establish unnecessary hardship by proof that: (1) a zoning restriction as applied to the property interferes with their reasonable use of the property, considering the unique setting of the property in its environment; (2) no fair and substantial relationship exists between the general purpose of the zoning ordinance and the specific restriction on the property; and (3) the variance would not injure the public or private rights of others.

Id. at 731-32.

Second Generation argues that it satisfied all three components of the new test by demonstrating that the proposed tower would allow it to fill a significant gap in wireless coverage in Pelham in a manner that would not materially alter the residential character of surrounding properties or compromise other public or private interests. I reject this contention because the record before the ZBA contains substantial evidence to support its contrary determination.

First, as I have previously noted, Second Generation has not developed a persuasive case for its claim that the proposed tower is the only feasible way to fill an existing gap in wireless coverage. Thus, it is in no position to claim that the ZBA must issue the variance in order to comply with the TCA.

Second Generation's argument also does not sufficiently account for the important role that aesthetic judgment plays in the exercise of zoning power. The New Hampshire Supreme Court has recognized this point in Asselin v. Town of Conway, 137 N.H. 368 (1993), where it held that "municipalities may validly exercise zoning power solely to advance aesthetic values because the preservation or enhancement of the visual element may promote the general welfare," id. at 371-72. The First Circuit has

-14-

similarly held that site specific aesthetic concerns alone may be sufficient to support a local land use authority's decision to deny an application for a telecommunications tower. <u>Southwestern Bell</u>, 244 F.3d at 60-61.

Second Generation proposes to construct its telecommunications tower in an area of Pelham that has retained its residential character. The area has no towers or other non-conforming commercial uses. Roads in the area are not lit by street lamps. Moreover, the property is located in a section of town that is prized for its spectacular views of the surrounding countryside. Several of the residences that would be affected by the proposed tower have deed restrictions protecting their views. Further, while only a limited number of existing residences would have a view of the tower, it is unclear whether it also would impair the views of any of the homes that are likely to be built in several proposed subdivisions in the area. Given these unique circumstances, I cannot say that the ZBA lacked substantial evidence to reject Second Generation's proposal given the unique setting of the property and its environment. The same evidence also adequately supports the ZBA's determinations that Second Generation's proposal would injure public and private rights by

impairing views in the area and that the zoning ordinance's general prohibition on the construction of telecommunications towers in the residential district bears a fair and substantial relationship to the general purposes of the ordinance. Thus, I reject Second Generation's contention that the record does not contain substantial evidence to support the ZBA's unnecessary hardship finding.

The TCA exemplifies Congress's continuing commitment to the principle of federalism. While Congress has identified the provision of wireless telecommunications services as a national priority, it has largely left to local land use authorities the power to control the means by which that national priority will be achieved. By placing the burden on an applicant raising an effective prohibition claim to demonstrate that alternative sites are not feasible and by adopting a definition of "substantial evidence" that leaves a permit denial in place unless it is clearly insupportable, the federal courts have preserved local control over the means by which the TCA will be implemented. Control over means, however, should not be confused with control over ends. If a future applicant is able to demonstrate that its proposal is the only feasible means to address a significant gap

in wireless coverage in the Route 128 area, local aesthetic concerns must give way to the national policy embodied in the TCA.

Because Second Generation has failed to prove its effective prohibition claim and the ZBA's decision is supported by substantial evidence, its motion for summary judgment (document no. 37) is denied. Pelham's motion for summary judgment (document no. 39) is granted. The clerk shall enter judgment for Pelham consistent with this Memorandum and Order.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

May 21, 2002

cc: Andrew Shulman, Esq.
Diane Gorrow, Esq.
William Kirschner, Esq.