24-2512-cv
*Indus. Tower & Wireless v. Roisman*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of October, two thousand twenty-five.

Present:

> BARRINGTON D. PARKER,
> SUSAN L. CARNEY,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

---

INDUSTRIAL TOWER AND WIRELESS, LLC,

> *Plaintiff-Appellant*,

v.                                                                              24-2512-cv

ANTHONY Z. ROISMAN, AS A MEMBER OF THE STATE OF VERMONT PUBLIC UTILITY COMMISSION, MARGARET CHENEY, AS A MEMBER OF THE STATE OF VERMONT PUBLIC UTILITY COMMISSION, RILEY ALLEN, AS A MEMBER OF THE STATE OF VERMONT PUBLIC UTILITY COMMISSION,

> *Defendants-Appellees*.

---

| | |
|---|---|
| For Plaintiff-Appellant: | NICHOLAS P. SHAPIRO (Daniel A. Seff, MSK Attorneys, Burlington, VT, *on the brief*), Phillips & Angley, Boston, MA |
| For Defendants-Appellees: | RYAN P. KANE (Patrick T. Gaudet, *on the brief*), Vermont Office of the Attorney General, Montpelier, VT |

Appeal from a judgment of the United States District Court for the District of Vermont (Geoffrey W. Crawford, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Industrial Tower & Wireless, LLC ("ITW") appeals from a judgment entered on August 21, 2024, in the United States District Court for the District of Vermont (Geoffrey W. Crawford, *District Judge*) granting summary judgment in favor of Defendants-Appellees Anthony Z. Roisman, Margaret Cheney, and Riley Allen (collectively "Defendants"), members of the State of Vermont Public Utility Commission ("PUC"). ITW brought claims under the Telecommunications Act of 1996 ("TCA"), alleging that: (1) Defendants effectively prohibited personal wireless services ("PWS") in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) by denying its proposed plan to construct a 140-foot telecommunications tower; (2) Defendants' order denying authorization for the proposed tower was not supported by substantial evidence, as required by 47 U.S.C. § 332(c)(7)(B)(iii); and (3) Vermont's "substantial deference" requirement in 30 V.S.A. § 248a(c)(2) is preempted by the TCA's "substantial evidence" requirement. We assume the parties' familiarity with the case.

A district court's grant of summary judgment under Federal Rule of Civil Procedure 56 is reviewed *de novo*. *See Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752 (2d Cir. 2023).[1] A district court's application of preemption principles is also

---

[1] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

reviewed *de novo*.  *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103 (2d Cir. 2010).

## I.  Effective Prohibition Claim

In relevant part, the TCA provides that regulation of the placement or construction of PWS facilities "by any State or local government or instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of [PWS]."  47 U.S.C. § 332(c)(7)(B)(i)(II).  To prevail on an effective prohibition claim, a plaintiff must demonstrate both that a significant gap exists in wireless coverage and that the proposed facility is the least intrusive means to close that gap.  *Sprint Spectrum, L.P. v. Willoth*, 176 F.3d 630, 643 (2d Cir. 1999).  Here, the parties agree there is a significant gap in coverage for both the specialized mobile radio service provided by ITW and the PWS provided by the four national carriers (Verizon, AT&T, T-Mobile, and Dish Wireless), but they disagree over the least intrusive means of closing the gap.  ITW asserts that a 140-foot tower is the least intrusive means, whereas Defendants claim that a 120-foot tower would be less intrusive while still effectively closing the coverage gap.

ITW has failed to meet its burden to demonstrate that the 140-foot tower is the least intrusive means to close the coverage gap.  In fact, ITW's own expert confirmed that a shorter tower can achieve some of the same objectives as the 140-foot tower, allowing at least one national carrier to provide PWS to the area.  An independent aesthetics report also concluded that a shorter tower would be less visible.  Importantly, Defendants did not prohibit construction of a telecommunications tower altogether, but instead concluded that a less intrusive option would still provide the area with PWS.  *See id.* at 643.

ITW argues that only a 140-foot tower can close the coverage gaps of all four national carriers and that the effective-prohibition bar imposed by § 332(c)(7)(B)(i)(II) requires the PUC

to accommodate each of the carriers. Defendants argue, in contrast, that the effective-prohibition bar is not triggered as long as one carrier can provide PWS. Courts have resolved that question in different fashions over time.[2]

We need not resolve that disagreement here, however, because ITW has not met its evidentiary burden under either construction. To qualify as "the least intrusive means for closing a significant gap," *Willoth*, 176 F.3d at 643, a proposed project must be at least reasonably likely to help close that gap. ITW's effective-prohibition claim is premised on the prospect of all of the national carriers co-locating on its tower. But it has not presented any evidence that all four carriers will co-locate on the 140-foot tower if it is built. On the contrary: in its complaint, ITW alleges that Verizon and AT&T "currently have other facilities in the general area that can connect with the Tower" but that T-Mobile and Dish Wireless "have no facilities in the general geographic area." App'x at 11.[3] After the parties' presentations, the PUC Hearing Officer found that "there is no evidence to demonstrate that those collocation opportunities will ever be used." App'x at 753. The PUC adopted that finding. Now, to contest that conclusion, ITW points only to its own experts' unsupported assertions that carriers will commit to co-locate on the tower once the project

---

[2] *See, e.g.*, *Omnipoint Commc'ns, Inc. v. City of White Plains*, 430 F.3d 529, 535 n.3 (2d Cir. 2005) (describing that question as "unsettled" in this Circuit); *Indep. Wireless One Corp. v. Town of Charlotte*, 242 F. Supp. 2d 409, 418-20 (D. Vt. 2003) (comparing different approaches). *Compare Second Generation Props., L.P. v. Town of Pelham*, 313 F.3d 620, 634 (1st Cir. 2002) (adopting ITW's preferred construction), *with APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler Cnty. of Pa.*, 196 F.3d 469, 480 (3d Cir. 1999) (adopting Defendants' preferred construction).

[3] We do not hold that a project proponent seeking to close a third party's coverage gap must necessarily secure a binding commitment from that third party before applying for a permit. Still, the record must contain more than the applicant's speculation about whether the project will result in additional PWS coverage. For example, the proponent could present evidence of the carrier's existing coverage and facilities in adjacent areas, or evidence of the carrier's plans to expand to the general coverage-gap area, which might support an inference that the tower would be utilized and the coverage gap filled. ITW presented coverage studies based on current Verizon and AT&T antenna sites in the Enosburgh area, *see* App'x at 357 & n.1—studies that Defendants did not contest. But ITW never introduced (or, so far as the record shows, conducted) similar studies for T-Mobile and Dish Wireless in connection with the PUC proceedings and before the PUC's denial decision. ITW later conducted similar studies in connection with this federal litigation, but the assumptions underlying those later analyses make clear that they do not necessarily depict facilities in current use by T-Mobile and Dish Wireless or show their actual existing coverage areas. *See* App'x at 106-07.

is permitted. The admissibility of these speculative assertions to prove the point is questionable. *See* Fed. R. Evid. 602. But even if admissible, those assertions do not encompass a claim that more national carriers will commit to co-locate on a 140-foot tower than can be accommodated on a 120-foot tower.[4]

We therefore affirm the district court's grant of summary judgment in favor of Defendants on the effective prohibition claim.

## II. Substantial Evidence Claim

In addition to the effective-prohibition provision, the TCA requires that any state or local government's denial of a request to construct PWS facilities be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii). Substantial evidence requires less than a preponderance of the evidence, but more than a scintilla of evidence, and requires evaluation of the entire record. *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999). Stated another way, the substantial evidence standard examines whether a reasonable mind could view the evidence as adequate to support a conclusion. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). In determining whether Defendants' denial order was supported by substantial evidence, "the traditional standard used for judicial review of agency actions" applies. *Town of Oyster Bay*, 166 F.3d at 494. This is a deferential standard of review under which this Court may neither "engage in our own fact-finding nor supplant the [local government's] reasonable determinations." *Id.*

---

[4] ITW's technical expert testified that a 120-foot tower would likely attract at least one national carrier (for an antenna position at the approximately 100-foot level) and repeatedly disclaimed his ability to predict whether it would attract a second carrier (for an antenna position at the approximately 90-foot level). ITW never conducted coverage analyses at the 90-foot level, so far as the record shows. Absent any substantiated record evidence on this question, we cannot conclude that the ITW expert's general claims created a triable issue of fact as to whether permitting a 120-foot instead of a 140-foot tower would effectively prohibit Verizon and AT&T from providing PWS. *See Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

The record before us shows that Defendants were placed in the difficult position of assessing the tradeoffs among aesthetic concerns, tower performance, and general benefit to the community. Defendants considered comments of concerned neighbors, expert aesthetic reports, letters from the regional planning commission on the tower's compliance with the regional plan, and testimony on how reducing the tower's height could impact its performance; when considered together this evidence amounts to more than a scintilla. We therefore conclude that Defendants' decision to deny construction of ITW's 140-foot tower is supported by substantial evidence. We affirm the district court's grant of summary judgment in Defendants' favor on the substantial evidence claim.

### III. Preemption Claim

Vermont's "substantial deference" requirement, outlined in 30 V.S.A. § 248a(c)(2), states that absent good cause, substantial deference must be given to the recommendations of the regional planning commission regarding the proposed project's compliance with the regional plan. ITW asserts that this "substantial deference" requirement impermissibly conflicts with the "substantial evidence" requirement, outlined above. ITW argues that because it was impossible for Defendants to apply both standards at the same time, Vermont's "substantial deference" requirement is preempted by federal law. This is a question of what is commonly called "conflict" or "obstacle" preemption. *Town of Clarkstown*, 612 F.3d at 104. "In order to establish obstacle preemption, the party asserting preemption must show more than the mere fact of tension between federal and state law." *Williams v. Marinelli*, 987 F.3d 188, 198 (2d Cir. 2021). In other words, unless the "repugnance or conflict is so direct and positive that the two acts cannot be reconciled or

consistently stand together," federal law will not preempt state law. *Id.* at 198-99.

Here, there is no sharp or repugnant conflict between Vermont law and the TCA. It is certainly possible for a state or local government to grant substantial deference to the plans and recommendations of regional planning commissions, as required by 30 V.S.A. § 248a(c)(2), while still ensuring that their denial of a request to construct a PWS facility is supported by substantial evidence in accordance with 47 U.S.C.§ 332(c)(7)(B)(iii). One does not preclude the other. For example, if a planning commission's recommendation was wholly unsupported, the ordinary deference granted to the commission would give way to § 332(c)(7)(B)(iii)'s substantial evidence requirement. Therefore, the district court did not err in concluding that there was no preemption issue here.

We have considered ITW's remaining arguments and find them unpersuasive. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk
