# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fairview Township,      :
     Appellant    :
             :
    v.       :
             :
Fairview Township Zoning   :
Hearing Board       :
             :
    v.       :
             : Nos. 1493 & 1494 C.D. 2018
Up State Tower Co., LLC    : Argued: February 12, 2020


BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
      HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE P. KEVIN BROBSON, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge
      HONORABLE ELLEN CEISLER, Judge
      HONORABLE J. ANDREW CROMPTON, Judge


OPINION
BY JUDGE FIZZANO CANNON    FILED: June 2, 2020


    Fairview Township (Township) appeals from the October 11, 2018 order of the Court of Common Pleas of Erie County (trial court), which, after a *de novo* hearing, granted Up State Tower Co., LLC's (Up State) requests for use, height and dimensional variances[1] with respect to two separate properties.

    Up State is in the business of: acquiring real estate, either by purchase or lease; constructing cellular towers; and providing space for cellular carriers to

---

[1] Although height is a type of dimensional variance, we use the term dimensional variance here to refer to only a setback.

collocate antennas on said cellular towers. Hearing Transcript (H.T.) 7/23/18 at 17, Reproduced Record (R.R.) at 74a; s*ee* Trial Court's Findings of Fact (F.F.) 4.[2] Up State will also apply for zoning variances if a desired parcel of property is not zoned to allow for telecommunications facilities. F.F. 5. Blue Wireless operates a facilities-based cellular telephone network and is a federal licensee of commercial mobile radio services. F.F. 6. Blue Wireless also operates stores at which consumers purchase cell phones for voice and data service. *Id.* To operate a cell phone network and provide voice and data services, Blue Wireless requires placement of radio equipment at certain heights in order for radio equipment to communicate properly. F.F. 7.

The Township's zoning ordinance permits the construction and operation of wireless telecommunications towers in the I-1 Light Industrial, I-2 Industrial Park, and I-3 Heavy Industrial Districts. F.F. 8. These districts comprise approximately eight percent of the Township. *Id.*

Up State submitted two separate variance applications to the Township's Zoning Heard Board (Board) proposing to construct 50-foot by 50-foot wireless telecommunications facilities with a height of 160 feet on 2 separate parcels of property: (1) 7463 West Ridge Road, Fairview, Pennsylvania (Dutch Road Property); and (2) 7475 West Ridge Road, Fairview, Pennsylvania (Water Street Property). F.F. 9-10. Both parcels are owned by Fairview Evergreen Nurseries, Inc. (Evergreen). F.F. 38, 68. The Dutch Road Property is located in the A-1 Rural District, and the Water Street Property is located in the R-1 Village District; neither district permits utility, communications, electric or gas operations as of right. F.F. 37, 69. The Township's zoning ordinance requires a telecommunications tower

_____

[2] All of the trial court's findings of fact appear in its opinion dated October 11, 2018.

2

constructed in any of the "I" industrially zoned districts with a height of 160 feet to have a minimum setback of 208 feet. F.F. 11. Up State's applications sought variances from the Township's zoning ordinance with respect to use, height and setback (dimensional) for each property. F.F. 10.

The Board conducted a hearing and granted Up State's variance requests, issuing separate decisions with respect to each property. R.R. at 23a-28a; 39a-44a. The Township, among others, appealed to the trial court,[3] and Up State intervened. The Township filed motions to consolidate, and the trial court consolidated the matters for purposes of trial only. R.R. at 46a-53a. Thereafter, the trial court conducted a *de novo* hearing and subsequently issued an opinion and order dated October 11, 2018, in which it granted the requested variances for both properties. With respect to the Dutch Road Property, the trial court found that Up State met all the elements entitling it to a variance under Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC),[4] as well as those required under section 1103(D) of the 2015 Fairview Township Zoning Ordinance (Zoning Ordinance).[5] Trial Court Opinion (Tr. Ct. Op.) 10/11/18 at 22-26. With respect to the Water Street Property, the trial court found that Up State failed to satisfy three

---

[3] Various landowners living near both properties filed appeals from the Board's decisions. However, the landowners have either discontinued their appeals or are not participating in the instant appeal.

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

[5] Fairview Township, Erie, Pennsylvania, 2015 Fairview Township Zoning Ordinance § 1103(D) (2015). The Township's Zoning Ordinance is available at https://www.fairviewtownship.com/sites/fairviewpa/files/u63/zo_ord_2015_0.pdf (last visited May 29, 2020).

3

of the five elements required for a variance under the MPC.[6]  *Id.* at 30.  Nevertheless, the trial court ultimately granted the variances for both the Dutch Road Property and the Water Street Property, concluding that the Telecommunications Act of 1996[7] (TCA) prohibited a denial of the variances for cellular communications towers under the circumstances here.

The Township appealed to this Court and, pursuant to the trial court's order, filed a statement of errors complained of on appeal in which it challenged, among other things, the trial court's findings related to hardship with respect to the Dutch Road Property and the trial court's interpretation and application of the TCA. On January 4, 2019, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a), addressing each of the Township's issues and asking this Court to affirm its October 11, 2018 order.

Before this Court,[8] the Township raises three issues for our review:  (1) whether Up State satisfied the hardship components under the MPC to establish

---

[6] Under the MPC, an applicant for a variance must establish that: "(1) there are unique physical circumstances or conditions; (2) causing unnecessary hardship in the form of an unreasonable inhibition of usefulness of the property; (3) the hardship is not self-inflicted; (4) the grant of the variance will not adversely impact public health, safety, and welfare; and (5) the variance sought is the minimum that will afford relief." *Twp. of E. Caln v. Zoning Hearing Bd. of E. Caln Twp.*, 915 A.2d 1249, 1252 (Pa. Cmwlth. 2007); *see* 53 P.S. § 10910.2.  The trial court found that Up State only satisfied the fourth and fifth requirements herein.  Tr. Ct. Op. 10/11/18 at 29-30.

[7] 47 U.S.C. §§ 151-624, 641-646.

[8] Where the trial court has taken additional evidence, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law.  *Vito v. Zoning Hearing Bd. of Borough of Whitehall*, 458 A.2d 620, 622 n.3 (Pa. Cmwlth. 1983).
The Board has filed a notice of non-participation in this matter indicating that because the trial court granted a *de novo* hearing, this Court reviews the trial court's opinion and not that of the Board.  Board's Notice Pursuant to Pa.R.A.P. 908, filed 2/14/19.  The Board stated, as a result, it has no interest in the outcome of the appeal and need not be a party.  *Id.*

4

entitlement to use, height and dimensional variances for the Dutch Road Property; (2) whether the TCA "trump[s] the MPC with respect to the placement of wireless communication towers as proposed"; and (3) whether the "one provider" rule—pursuant to which a provider must establish that the area the new facility will serve is not already served by another provider, announced by the Third Circuit in *APT Pittsburgh Limited Partnership v. Penn Township Butler County of Pennsylvania*, 196 F.3d 469 (3d Cir. 1999), should "remain the law of the Commonwealth" despite the Federal Communication Commission's (FCC) 2009 Declaratory Ruling? Township's Brief at 6.

## VARIANCE FOR DUTCH ROAD PROPERTY – HARDSHIP

Section 910.2 of the MPC provides that a zoning board may grant a variance where it finds the applicant has established *all* of the following conditions:

> (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

> (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

> (3) That such unnecessary hardship has not been created by the [applicant].

5

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. § 10910.2(a). Similarly, Section 1103(D) of the Zoning Ordinance provides:

The Zoning Hearing Board may adapt or vary the strict application of any requirements of this Ordinance in the case of irregular, narrow, shallow or steep lots, or other physical conditions whereby such strict application would result in practical difficulty or unnecessary hardship that would deprive the owner of the reasonable use of the land or building involved but in no other case.

Zoning Ordinance § 1103(D). The Zoning Ordinance further states:

1. No such variance in the strict application of any provision of this Ordinance shall be granted by the Zoning Hearing Board unless it finds the conditions stated in Section 1103(D) above are such that the strict application of this Ordinance would deprive the applicant of the reasonable use of land or buildings.

2. The granting of any variance shall be in harmony with the general purpose and intent of this Ordinance and the Comprehensive Plan, and shall not be injurious to the neighborhood or otherwise detrimental to the public welfare and shall be the minimum necessary to afford relief.

3. The [B]oard must determine that any unnecessary hardship has not been created by the appellant.

6

Zoning Ordinance § 1103(D)(1)-(3).

The Township argues that Up State failed to establish the necessary hardship to grant the variances for the Dutch Road Property because the testimony demonstrated only a business hardship to Up State, which is insufficient. Township's Brief at 20. The Township states that it is unknown whether the Dutch Road Property could be used for any other permitted uses and whether it would be cost prohibitive to use the Dutch Road Property for another permitted use because Up State failed to offer any evidence concerning this. *Id.* at 15. The Township contends that the trial court erred in concluding that the inability to engage in horticulture was enough to establish hardship. *Id.* at 26. Up State does not respond to the Township's argument or even address the issue of hardship in its brief.

"The burden on an applicant seeking a zoning variance is heavy, and variances should be granted sparingly and only under exceptional circumstances." *Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 891 (Pa. Cmwlth. 2015). With respect to a *use* variance, our Supreme Court has stated:

> unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property has no value for any purpose permitted by the zoning ordinance. . . .
>
> This Court has repeatedly made clear that in establishing hardship, an applicant for a variance is not required to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose. . . .

7

*Marshall v. City of Philadelphia*, 97 A.3d 323, 330 (Pa. 2014) (quotation marks and citations omitted) (emphasis omitted). "Although a property owner is not required to show that his or her property is valueless unless a variance is granted, mere economic hardship will not of itself justify a grant of a variance." *Id.*; s*ee also Pham*, 113 A.3d at 892 (citing *Marshall*). "In other words, mere hardship is not sufficient; there must be unnecessary hardship." *S. Broad St. Neighborhood Ass'n v. Zoning Bd. of Adjustment of Phila.*, 208 A.3d 539, 548 (Pa. Cmwlth. 2019) (internal quotation marks and bracket omitted). Additionally, the fact that "the property may be used more profitably with the proposed use is not grounds for granting a variance." *Society Created To Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of Phila.*, 814 A.2d 847, 850 (Pa. Cmwlth. 2003) (*SCRUB*); *see also Marshall*, 97 A.3d at 333 (stating that "evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance").

Here, the trial court found that the Dutch Road Property is irregular in that it is pie-shaped. F.F. 46. The trial court also found that the property has unique physical circumstances because it is uneven and has a "swale" or a dip/valley on the southern portion. F.F. 48. The trial court found that the southern portion of the property is not being utilized because the topography does not allow for cultivation of ornamental plants or farm crops. F.F. 49. The trial court found that the proposed communications site would occupy a 50-foot by 50-foot area of the northwest portion of the property and would be located such that it would have an approximately 2,380-foot front yard setback, a 13½-foot rear yard setback, and side yard setbacks of 264.9 feet and 14.6 feet. F.F. 63-64. The trial court concluded that the existence of the uneven topography and "swale" on the southern portion of the property and the irregular "pie-wedge" shape of the property constituted unique

8

physical circumstances or conditions of the Dutch Road Property and that such unique physical conditions rendered the property unusable for horticulture, a permitted use in the A-1 Rural District in which the property lies. Tr. Ct. Op. 10/11/18 at 22-23; Tr. Ct. Op. 1/4/19 at 3. The trial court found that Evergreen owns property immediately north of the Dutch Road Property on which Evergreen operates a tree farm and grows ornamental trees and other plants. F.F. 47. The trial court also found that the previous owner of the Dutch Road Property dumped non-organic materials onto the property, including expended diesel containers and used tires. F.F. 62. The trial court further found that Evergreen purchased the Dutch Road Property because the price was reasonable and to protect the southern border of its parcel to the north, which the trial court concluded was the only useful purpose of the Dutch Road Property. F.F. 60; Tr. Ct. Op. 10/11/18 at 23.

Although there are unique physical conditions of the property, it is apparent from the trial court's findings that it only considered a horticultural use for the property. However, Section 709 of the Zoning Ordinance also permits the following uses as of right in the A-1 Rural District: single-family detached dwellings; group residence facilities; parks, playgrounds and other publicly owned and/or operated recreational uses, including those of a subdivision association; municipal or civic buildings, public libraries, museums, fire and police stations; and cemeteries and mausoleums. *See* Zoning Ordinance § 709(A)(1-3), (5-6). Additionally, educational, religious and philanthropic uses may be permitted as a special exception. *See* Zoning Ordinance § 709(A)(4).

Further, the trial court found that the proposed telecommunications site would occupy a 50-foot by 50-foot area of the *northwest portion* of the property and would be located on the property such that it would have an approximately 2,380-

9

foot front yard setback, a 13 ½-foot rear yard setback, and side yard setbacks of 264.9 feet and 14.6 feet. F.F. 63-64. However, the "swale" is on the southern portion of the Dutch Road Property, and interestingly, the trial court found that the *southern portion* of the Dutch Road Property is not being utilized because the topography does not allow for cultivation of ornamental plants or farm crops. The trial court did not consider whether the Dutch Road Property, including other portions of the property, can be used for other permitted uses, and significantly, Up State does not direct us to any evidence in the record regarding whether the property can be used for other permitted uses.

We acknowledge that this was not the only way for Up State to establish hardship for a use variance—an applicant can also establish that the property can be conformed for a permitted use only at a prohibitive expense or that the property has no value for any purpose permitted by the Zoning Ordinance. *Marshall*, 97 A.3d at 330. The trial court, however, did not find that Up State established either of these, and again, Up State has failed to point to any evidence in the record establishing such. We are mindful that it is Up State's burden to establish the necessary elements for a variance. *See Pham*, 113 A.3d at 891. Therefore, we conclude that Up State failed to establish the requisite unnecessary hardship for a use variance for the Dutch Road Property, and the trial court erred as a matter of law in concluding otherwise.

Because Up State did not establish the requisite hardship for a use variance, we need not address whether it established the requisite hardship for the height and dimensional variances.

Our conclusion that Up State failed to establish it was entitled to a use variance for the Dutch Road Property does not end our inquiry as the trial court

10

found that Up State was entitled to variances for both the Dutch Road Property and the Water Street Property under the TCA.

## THE TELECOMMUNICATIONS ACT

### *Trial Court Decision*

As stated, the trial court granted the variances for both the Dutch Road Property and the Water Street Property and concluded that the TCA prohibited denying the variances under the circumstances here. Specifically, the trial court noted that the TCA places substantive limitations on state and local governments, which "'shall not prohibit or have the effect of prohibiting the provision of personal wireless services.'" Tr. Ct. Op. 10/11/18 at 32 (quoting Section 332(c)(7)(B)(i)(II) of the TCA, 47 U.S.C. § 332(c)(7)(B)(i)(II)). In construing what it means to "prohibit or have the effect of prohibiting[,]" the trial court stated:

> The Third Circuit has implemented a two-pronged test to determine whether a state or local government, or instrumentality thereof, has effectively prohibited the provision of personal wireless services thereby violating Section 332(c)(7)(B)(i)(II). Effective prohibition of service is present if the provider establishes: (1) the provider's "facility will fill an existing significant gap in the ability of remote users to access the national telephone network"; and (2) the "manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve." [*APT*, 196 F.3d at 480].

*Id.* With respect to the first prong, that is, whether the facility will fill an existing gap, the trial court stated:

> The Third Circuit followed the "one provider" rule, which required a showing that a "significant gap" in a wireless provider's service as a gap in service that was not being serviced by any other providers. *See Omnipoint*

11

*Commc'ns Enters. L.P. [v. Zoning Hearing Bd. of Easttown Twp.*, 331 F.3d [386,] 398 (3d Cir. 2003). However, in 2009, the FCC rejected this "one provider" interpretation of the "effective prohibition" clause of Section 332(c)(7)(B)(i) and adopted a standard that requires a provider to show a gap in its own service. *See* [*In the Matter of Petition for Declaratory*] *Ruling to Clarify Provisions of Section 332(c)(7)(B)* [*to Ensure Timely Siting Review and to Preempt Under Section 253 State and Local Ordinances that Classify All Wireless Siting Proposals as Requiring a Variance*], 24 F.C.C.R. 13994 ¶ 56-61 (Nov. 18, 2009) [(2009 Declaratory Ruling)] ("[A] State or local government that denies an application for personal wireless service facilities siting *solely* because 'one or more carriers serve a given geographic market' has engaged in unlawful regulation that 'prohibits or ha[s] the effect of prohibiting the provision of personal wireless services,' within the meaning of Section 332(c)(7)(B)(i)(II).").

Tr. Ct. Op. 10/11/18 at 32-33 (emphasis added). After further analysis, the trial court concluded that the FCC's 2009 Declaratory Ruling was entitled to deference and adopted the rule that "a significant gap in service must exist in an area only for that particular service provider[,]" thereby rejecting the "one provider" rule. *Id.* at 33. The trial court then determined: (1) "the two proposed telecommunications towers together will substantially remedy Blue Wireless' gap in service"; and (2) the proposal is the least intrusive means of remedying Blue Wireless' gap in coverage in the Township. Tr. Ct. Op. 10/11/18 at 35-38. The trial court concluded that a denial of the variances would "effectively prohibit Blue Wireless from providing seamless wireless service in Fairview Township in violation of Section 332(c)(7)(B)(i)(II) of the TCA." Tr. Ct. Op. 10/11/18 at 38. Accordingly, the trial court granted the variances for both properties. Tr. Ct. Op. and Order 10/11/18 at 39-40.

In its subsequent Pa.R.A.P. 1925(a) opinion filed January 4, 2019, the trial court reaffirmed its analysis and application of the TCA. Tr. Ct. Op. 1/4/19 at 33-36. The trial court also noted that on September 26, 2018, the FCC issued an additional Declaratory Ruling in which it "reaffirm[ed]" its interpretation of the effective prohibition standard, "namely, that a state or local legal requirement constitutes an effective prohibition if it 'materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment.'" *Id.* at 36 (quoting *In the Matter of Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Invest.*, 33 F.C.C.R. 9088, 9102 ¶ 35 (2018), 2018 WL 4678555 *12) (2018 Declaratory Ruling). The trial court further noted that the 2018 Declaratory Ruling stated that "the test is met not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities." Tr. Ct. Op. 1/4/19 at 36 (quoting 2018 Declaratory Ruling).

### *Parties' Arguments*

The Township argues that the TCA does not "trump" the MPC with respect to the placement of wireless telecommunications towers and that the "one provider rule" enunciated in *APT* should "remain the law of the Commonwealth" despite the FCC's 2009 Declaratory Ruling. Township's Brief at 6, 20-21. The Township contends that although the TCA places restrictions on local regulatory bodies, it does not completely preempt their ability to control local zoning decisions in relation to telecommunication services. *Id.* at 29. The Township further points out that the MPC and the Township's Zoning Ordinance are presumed valid and there has been no attack upon the MPC or the Zoning Ordinance herein. *Id.* at 31. The Township also argues that Pennsylvania should follow the "one provider" rule

13

because, otherwise, if a provider need only show a gap in *its* coverage, then any wireless provider without a presence in a particular location could apply for a variance and construct a cellular communications tower by merely establishing it does not have a presence in the area, without having to establish the requirements for a variance and without any regard for zoning, the MPC or the neighborhood. Township's Brief at 35-36.

Further, with respect to giving deference to the FCC's 2009 Declaratory Ruling, the Township contends that although agency decisions are usually granted "*Chevron* deference,"[9] such deference applies only if the agency's construction applies to ambiguous terms of the statute. Township's Brief at 36-37. The Township contends that, although not expressly stated, *APT* can fairly be read to conclude that the language at issue is unambiguous, and therefore, this Court is not required to afford deference to the FCC's Declaratory Rulings with respect to the "one provider" rule. *Id.* at 37. Lastly, the Township contends that, even if the FCC's interpretation is correct, there is no evidence in the record to establish that Up State engaged in the appropriate investigation to determine whether the proposed sites were the least intrusive. *Id.*

In response, Up State contends that the Township relies on case law, namely the "one provider rule," which is no longer valid law. Up State's Brief at 19. Up State does not contend that *APT* is no longer good law in its entirety but, rather, that portions of the decision have been repudiated by the FCC. *Id.* at 21. Like the trial court, Up State relies on the FCC's 2009 Declaratory Ruling and points to

---

[9] *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). "Under federal and Pennsylvania jurisprudence, properly[]enacted legislative rules enjoy a presumption of reasonableness and are accorded a particularly high measure of deference—often denominated *Chevron* deference—by reviewing courts." *Nw. Youth Servs., Inc. v. Dep't of Pub. Welfare*, 66 A.3d 301, 311 (Pa. 2013) (citing *Chevron, U.S.A.*).

14

federal district court cases within the Third Circuit decided subsequent to that Ruling, which recognized that the FCC's 2009 Declaratory Ruling is entitled to deference and stated that the "one provider" rule is no longer applicable. *Id.* at 21-22. Alternatively, Up State argues that it met its burden of establishing a significant gap in its coverage in the Township and that it made a good faith effort to identify lesser intrusive alternatives to the proposed facility. *Id.* at 22-24.

*Analysis*

Section 332(c) of the TCA provides, in relevant part:

**(7) Preservation of local zoning authority**

**(A) General authority**

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

**(B) Limitations**

**(i)** The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof--

> **(I)** shall not unreasonably discriminate among providers of functionally equivalent services; and

> **(II)** shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

15

47 U.S.C. § 332(c)(7)(A), (B)(i)(I)-(II). Thus, as the trial court noted, while Section 332(c)(7) of the TCA preserves state and local governments' authority to regulate zoning, it "places limitations on the general authority of state or local governments or instrumentalities thereof to make 'decisions regarding the placement, construction, and modification of personal wireless service facilities.'" *Liberty Towers, LLC v. Zoning Hearing Bd. of Lower Makefield Twp.*, 748 F. Supp. 2d 437, 441 (E.D. Pa. 2010) (quoting 47 U.S.C. § 332(c)(7)(A)); *see also* Tr. Ct. Op. 10/11/18 at 31.

At issue here is the meaning and scope of the limitation set forth in subsection (B)(i)(II) of Section 332(c)(7), that is, whether the local zoning pursuant to which the variances are being denied "prohibit[s] or [has] the effect of prohibiting the provision of personal wireless services."[10] 47 U.S.C. § 332(c)(7)(B)(i)(II). The TCA does not define what it means to "prohibit" or "have the effect of prohibiting[.]"

In applying this provision of the TCA, the trial court framed the issue as whether the provider must prove: (1) that there is a significant gap in service to remote users *that was not being serviced by another provider*, *i.e.*, the "one provider" rule, as set forth in *APT*; or (2) that there is a significant gap in service in any area *for that particular service provider*. The trial court noted that, in 1999, the Third Circuit adopted the "one provider" rule, but that other federal circuits have reached opposite conclusions and require a provider to show only *a gap in its own service*. Tr. Ct. Op. 1/4/19 at 35. The trial court noted that "[i]n response to this 'circuit split,' the FCC in 2009 issued its Declaratory Ruling[,]" wherein it rejected the "one

---

[10] The Township states the "unreasonable discrimination" prong of the TCA, set forth in subsection (B)(i)(I), is not at issue because Up State did not argue that before the trial court. Township's Brief at 33 n.3. Up State does not dispute this, nor does it argue "unreasonable discrimination" in its brief filed with this Court. Hence, these issues will not be addressed herein.

provider" rule in favor of a standard that requires a provider to show a gap in its own service rather than a showing that the area is not already served by another provider. Tr. Ct. Op. 1/4/19 at 35 (citing 2009 Declaratory Ruling at 13994 ¶¶ 56-61 (emphasis omitted)). The trial court stated that although the Third Circuit has not yet addressed the FCC's 2009 Declaratory Ruling, the Eastern District of Pennsylvania has concluded this Ruling is entitled to deference. Tr. Ct. Op. 10/11/18 at 32-33 (citing *Liberty Towers,* 748 F. Supp. 2d at 444 (concluding that "under well-established principles of administrative law, the FCC's Declaratory Ruling is entitled to deference from the . . . courts"); *see also Levy v. Sterling Holding Co., LLC*, 544 F.3d 493, 502 (3d Cir. 2008) ("[I]f a court of appeals interprets an ambiguous statute one way, and the agency charged with administering that statute subsequently interprets it another way, even that same court of appeals may not then ignore the agency's more recent interpretation.")). Accordingly, the trial court determined that the FCC's 2009 Declaratory Ruling was entitled to deference and stated that it was adopting the rule, as set forth and adopted in *Liberty Towers*, "that a significant gap in service must exist in an area only for that particular service provider." Tr. Ct. Op. 10/11/18 at 33. Additionally, in its subsequent 1925(a) opinion, the trial court stated that, pursuant to the FCC's 2018 Declaratory Ruling, the relevant inquiry is no longer limited to just a gap in service for a particular provider, but also includes a particular service provider's efforts to densify, expand or otherwise improve its existing service capabilities. Tr. Ct. Op. 1/4/19 at 35-37.

The Township, however, argues that if a provider need only show a gap in its coverage in order to obtain a variance, then any wireless provider without a presence in a particular location could apply for a variance and construct a cellular communications tower anywhere it desires by merely establishing it does not have a

17

presence in the area, without having to establish the requirements for a variance and without any regard for zoning, the MPC or the neighborhood. Township's Brief at 35-36. The Township contends that the TCA must be read in conjunction with the MPC and its hardship requirements and that the TCA does not "trump" the MPC with respect to the placement of wireless telecommunications towers. Township's Brief at 30, 35-36. The Township asserts the TCA expressly preserves a local municipality's ability to zone where towers are placed. Township's Brief at 30.

Notably, simply looking at the question of whether a service provider has a gap in its coverage (or is attempting to densify, expand or otherwise improve its existing service) is not the entirety of the FCC's ruling on what constitutes a prohibition or effective prohibition. Significantly, in rejecting the "one provider" rule, the FCC's 2009 Declaratory Ruling states, "it is a violation of Section 332(c)(7)(B)(i)(II) [of the TCA] for a State or local government to deny a personal wireless service facility siting application *solely because* that service is available from another provider." 2009 Declaratory Ruling at 14000 ¶ 19 (emphasis added); *see also id.* at 14016 ¶ 56 (stating, "a State or local government that denies an application for personal wireless service facilities siting *solely because* 'one or more carriers serve a given geographic market' has engaged in unlawful regulation that 'prohibits or ha[s] the effect of prohibiting the provision of personal wireless services,' within the meaning of Section 332(c)(7)(B)(i)(II)") (emphasis added); *id.* at 14021 ¶ 71. Additionally, the FCC stated, "where a *bona fide* local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by our ruling today." *Id.* at 14018 ¶ 62. Accordingly, given this language in the FCC's 2009 Declaratory Ruling, we agree with the Township

18

that the TCA does not "trump" the MPC with respect to the placement of wireless telecommunications towers.

Despite quoting the "solely because" language from the FCC's ruling in its opinion,[11] the trial court, in concluding that an applicant need establish only a gap or other deficiency in its own coverage in order to establish entitlement to a variance, took the FCC's statement out of context and did not consider the entirety of the FCC's statement as to what constitutes a prohibition or effective prohibition. This was error. The FCC's 2009 Declaratory Ruling directs us to look at what "drives" the zoning decision or, in other words, on what the decision is based.

Here, the denial of the variances is not "solely because" the service is available from another provider but, rather, is based on a bona fide local zoning concern. Indeed, with respect to the Water Street Property, the trial court found that Up State failed to establish three of the five elements necessary for a variance. Specifically, the trial court found that Evergreen's purpose of entering into the lease with Up State to construct the telecommunications tower was to earn additional revenue and that, therefore, the unnecessary hardship criterion was not satisfied. Tr. Ct. Op. at 27. The trial court also found that there were no unique physical circumstances or conditions of the property causing unreasonable hardship. *Id.* In fact, the trial court noted that Evergreen is presently making reasonable use of the Water Street Property and has been doing so in excess of 20 years. *Id.* Lastly, the trial court found that any unnecessary hardship was self-inflicted because Evergreen agreed to subdivide the Water Street Property and, as a result, needed dimensional variances. *Id.* at 28. These reasons have nothing to do with whether service is available from another provider or whether Blue Wireless needed to densify, expand

---

[11] *See* Tr. Ct. Op. 10/11/18 at 33 (quoting 2009 Declaratory Ruling at 14016 ¶ 56).

19

or otherwise improve its network. Consequently, the denial of the variances pursuant to the MPC was not based *solely* on the presence of other providers or the existence of some coverage by Blue Wireless. The decision with respect to the Water Street Property was based on a bona fide local zoning concern, *i.e.*, a lack of unique physical circumstances or conditions that cause an unnecessary hardship and any hardship was self-inflicted.

Additionally, we have determined, contrary to the trial court's decision, Up State failed to establish the requisite hardship to entitle it to a variance for the Dutch Road Property. *See supra* at pp. 5-10. This, too, is a bona fide local zoning concern and has nothing to do with whether service is available from another provider or whether Up State needs to densify, expand or otherwise improve its network.

In short, the presence of other carriers, or the condition of Blue Wireless' coverage, did not play a role in the variance determinations for either the Water Street Property or the Dutch Road Property. Thus, because the prohibition of services here was not based "solely on the presence of another carrier" and because "a *bona fide* local zoning concern, rather than the mere presence of other carriers, drives [this] zoning decision," the decision to deny the variances does not "prohibit" or "effectively prohibit" the provision of wireless services in contravention of the TCA and, therefore, "should be unaffected by [the FCC's] ruling." *See* 2009 Declaratory Ruling at 14017 ¶ 60, 14018 ¶ 62. Indeed, we have stated that "[n]ot every municipality's denial of an application to build a wireless facility violates the TCA." *Vineyard Oil & Gas Co. v. N. E. Twp. Zoning Hearing Bd.*, 215 A.3d 77, 87 (Pa. Cmwlth. 2019) (citing *APT*); *see also APT*, 196 F.3d at 478 (stating that to "[i]nterpret[] the TCA's 'effect of prohibiting' clause to encompass every individual

zoning denial simply because it has the effect of precluding a specific provider from providing wireless services, however, would give the TCA preemptive effect well beyond what Congress intended").

The effect of the trial court's application of the TCA is that simply because a gap in Blue Wireless' coverage exists, and the proposed towers are the least intrusive way to remedy the gap, Up State is entitled to the variances. However, this application of the TCA completely ignores the FCC's mandate that where a *bona fide* local zoning concern drives the decision, it is unaffected by the FCC's ruling. There is a difference between: (1) mandating the granting of an application for a cell tower simply because a provider has a significant gap in coverage and has proposed the least intrusive means to remedy it; and (2) prohibiting the denial of an application solely on the basis that another provider is covering an area. The two are not the same. The FCC's ruling does only the latter; however, the trial court's ruling follows the former, apparently believing this to be the effect of the FCC's ruling. Application of the former would mean that a provider could place a tower wherever it pleases so long as it establishes a significant gap in its coverage (or a desire to densify, expand, or otherwise improve its network) and has proposed the least intrusive means to remedy it. Application of the latter means that a state or local regulatory authority cannot deny an application based *solely* on the fact that another provider provides coverage or that there is coverage in the area. Moreover, under the trial court's interpretation of the TCA, authorizing a cell tower simply because a provider has a gap in coverage, or needs to expand, densify or otherwise improve its coverage, effectively means that the insufficiency in coverage is a hardship entitling the provider to a variance. This cannot be the case, however, as such a "hardship" is an economic hardship. The hardship must be to the property, not the person. *See*

21

*Yeager v. Zoning Hearing Bd. of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001) (stating that a variance "is appropriate only where the *property*, not the person, is subject to hardship") (emphasis in original) (internal quotation marks and citation omitted).

Our interpretation is supported by the FCC's own statements explaining its 2009 Declaratory Ruling, in which the FCC repeatedly stated that its ruling does not affect zoning decisions based on grounds other than the presence of another carrier. For example, the FCC explained, "[o]ur actions herein will not preempt State or local governments from reviewing applications for personal wireless service facilities['] placement, construction, or modification" and that, "pursuant to the authority Congress reserved to [State or local governments] in Section 332(c)(7)(A)[,] [u]nder Section 332(c)(7)(B)(iii), they may deny such applications if the denial is "supported by substantial evidence contained in a written record." 2009 Declaratory Ruling at 14002, ¶ 25. The FCC's 2009 Declaratory Ruling also stated:

> As explained below, however, our interpretation of the statute does not mandate such approval and therefore does not strip State and local authorities of their Section 332(c)(7) zoning rights. Rather, we construe the [TCA] statute to bar State and local authorities from prohibiting the provision of services of individual carriers *solely* on the basis of the presence of another carrier *in the jurisdiction*; State and local authority to base zoning regulation *on other grounds* is left intact by this ruling.

2009 Declaratory Ruling at 14017 ¶¶ 59-60 (footnotes omitted) (emphasis added). The FCC again noted that its ruling preserves state and local authority to reasonably regulate, stating:

22

Our determination also serves the [TCA's] goal of preserving the State and local authorities' ability to reasonably regulate the location of facilities in a manner that operates in harmony with federal policies that promote competition among wireless providers. As we indicated above, *nothing we do here interferes with these authorities' consideration of and action on the issues that traditionally inform local zoning regulation. Thus, where a bona fide local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by our ruling today.*

*Id.* at 14018 ¶ 62 (footnotes omitted) (emphasis added) (italics in original deleted).[12] Additionally, the FCC's subsequent 2018 Declaratory Ruling reaffirmed the role of state and local governments in land use and zoning matters. The FCC stated that its ruling "ensures that state and local elected officials will continue to play a key role in reviewing and promoting the deployment of wireless infrastructure in their communities." 2018 Declaratory Ruling at 9090 ¶ 6. The FCC added:

our interpretation remains faithful to the purpose of Section 332(c)(7) to balance Congress's competing desires to preserve the traditional role of state and local governments in regulating land use and zoning, while encouraging the rapid development of new telecommunications technologies. Under our

---

[12] We acknowledge that with respect to a denial of an application, the FCC stated:

[w]e note that the denial of an application may sometimes establish a violation of Section 332(c)(7)(B)(ii) if it demonstrates a policy that has the effect of prohibiting the provision of personal wireless services as interpreted herein. Whether the denial of a single application indicates the presence of such a policy will be dependent on the facts of the particular case.

2009 Declaratory Ruling at 14019 ¶ 65. Here, however, there was no evidence presented regarding the presence of any such policy.

23

> interpretation, states and localities retain their authority over personal wireless facilities deployment.

2018 Declaratory Ruling at 9157 ¶ 135.

The TCA's purpose is to promote competition, not to take over or completely preempt the state and local authority to regulate zoning. The Third Circuit has stated, "Congress enacted the TCA to provide 'a *pro-competitive*, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition.'" *APT*, 196 F.3d at 473 (quoting H.R. Conf. Rep. No. 104–458 (1996), reprinted in 1996 U.S.C.C.A.N. 10, 1124) (emphasis added); *see* 47 U.S.C. § 332(c)(7)(B)(i)(I), (II) (stating that the regulation of personal wireless service facilities "shall not unreasonably *discriminate among providers*" *and* "shall not prohibit or have the effect of prohibiting wireless services") (emphasis added). The TCA "was *intended to promote competition* by limiting the ability of local authorities to regulate and control the expansion of telecommunications technologies." *Omnipoint Commc'ns Enters., L.P. v. Newtown Twp.*, 219 F.3d 240, 242-43 (3d Cir. 2000) (emphasis added); *see* 2018 Declaratory Ruling at 9102 ¶ 35 (stating that a "state or local legal requirement constitutes an effective prohibition if it 'materially limits or inhibits the ability *of any competitor or potential competitor to compete* in a fair and balanced legal and regulatory environment'" (emphasis added)). The TCA "strikes a balance between two competing aims— to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." *Omnipoint Commc'ns, Inc. v. City of White Plains*, 430 F.3d 529, 531 (2d Cir. 2005) (quotation marks and citation omitted); *see* 2009 Declaratory Ruling at 13995 ¶ 3 (stating, "[w]hile Section 332(c)(7) of the [TCA]

24

preserves the authority of State and local governments with respect to such approvals, Section 332(c)(7) also limits such State and local authority, thereby protecting core local and State government zoning functions while fostering infrastructure build out"); *see also Liberty Towers*, 748 F. Supp. 2d at 441 (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005) (stating, "[t]o that end, Congress set out to reduce 'the impediments imposed by local governments upon the installation of facilities for wireless communication, such as antenna towers'").

For the foregoing reasons, the trial court erred in concluding that the variances had to be granted merely because a gap in Blue Wireless' coverage existed. The subject denials were not based solely upon another provider's ability to provide coverage in the gap or based upon Blue Wireless' existing coverage, but, rather, were based upon a lack of hardship.[13]

Accordingly, the trial court's order is reversed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[13] Because of our disposition and the fact the variances are not being denied solely because there is not a significant gap in Blue Wireless' coverage or because a gap existed that was being served by another provider (*i.e.*, the "one provider" rule), we need not reach the question of whether Pennsylvania should apply the "one provider" rule. Additionally, given our disposition, we need not address whether Up State established that its proposal was the least intrusive means to remedy its coverage gap.

25

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fairview Township,             :
             Appellant     :
             :
      v.         :
             :
Fairview Township Zoning   :
Hearing Board          :
             :
      v.         :
             :  Nos. 1493 & 1494 C.D. 2018
UP State Tower Co., LLC    :

## O R D E R

AND NOW, this 2nd day of June, 2020, the October 11, 2018 order of the Court of Common Pleas of Erie County is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge