# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

SBA Towers II, LLC,              :
             Appellant      :
                               :
         v.                :    No. 440 C.D. 2020
                               :    Submitted: December 7, 2020
Zoning Hearing Board of      :
Logan Township                :
                               :
         v.                :
                               :
Tarpon Towers II, LLC         :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
                 HONORABLE J. ANDREW CROMPTON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**            **FILED: January 22, 2021**

Appellant SBA Towers II, LLC (SBA Towers) appeals from an order of the Court of Common Pleas of Blair County (common pleas), dated March 30, 2020. Common pleas affirmed the decision of the Zoning Hearing Board of Logan Township (ZHB), thereby denying SBA Towers' appeal of the approval of Tarpon Towers II, LLC's (Tarpon) and Cellco Partnership d/b/a Verizon Wireless's (Verizon) application for a special exception or a use variance (Application). For the reasons discussed below, we vacate and remand.

---

[1] This case was assigned to the opinion writer prior to January 4, 2021, when Judge Brobson became President Judge.

Orchard Plaza Station LLC (Orchard) is the owner of certain real property (Property) located at 415 Orchard Avenue, Logan Township (Township), Blair County, Pennsylvania. Tarpon entered into a lease agreement with Orchard for the lease of a 45-foot by 45-foot section of the Property for the construction, support, and operation of a communications tower upon which Verizon planned to collocate its antennas. The Property is located in a Business District. The Township's Zoning Ordinance (Ordinance) does not specifically permit communications towers in a Business District. Section 801(1) of the Ordinance, however, incorporates all buildings, structures, and uses permitted in an R-2 District into a Business District, and Section 701(1) of the Ordinance incorporates all buildings, structures, and uses permitted in an R-1 District into an R-2 District. Pursuant to Sections 501(2) and 1001(A)(9) of the Ordinance, communications towers are permitted in an R-1 District by special exception, provided that the applicant establishes that the criteria set forth in Section 1019 of the Ordinance[2] have been met. The Ordinance also permits the ZHB to grant a use variance in the event of unnecessary hardship, but the applicant must establish that the criteria set forth in Section 1108(1) of the Ordinance have been met.

On June 15, 2017, Tarpon and Verizon filed their Application with the ZHB, seeking a special exception or a use variance to construct a 165-foot-tall monopole communications tower at the Property, as well as a variance from the requirement set forth in Section 1019(11) of the Ordinance to provide a landscape screen between the communications tower and abutting properties.[3] The ZHB conducted public

---

[2] Section 1018 of the Ordinance also sets forth certain regulations applicable to communications antennas and communications equipment buildings.

[3] Based upon our review of the Application, it appears that Tarpon and Verizon were seeking a special exception to construct a communications tower at the Property. (*See* Reproduced **(Footnote continued on next page…)**

2

hearings on the Application on July 27, 2017, and August 17, 2017. SBA Towers, which operates a communications tower (SBA Tower) located immediately south of Tarpon's proposed communications tower at 400 Highland Avenue and upon which Verizon's antennas are currently mounted, was present at the August 17, 2017 hearing and objected to the Application.

On September 6, 2017, the ZHB rendered its decision, granting the Application. SBA Towers appealed the ZHB's decision to common pleas, and common pleas permitted Tarpon to intervene based upon a stipulation of the parties. Thereafter, on August 27, 2018, SBA Towers filed a motion to allow the submission of additional evidence. By order dated November 9, 2018, common pleas granted SBA Towers' motion and appointed a referee to preside over the hearing of the additional evidence. The referee held a hearing on February 7, 2019, and the transcript from such hearing was filed with common pleas and made part of the evidentiary record.

Thereafter, by opinion and order dated March 30, 2020, common pleas affirmed the ZHB's decision and denied SBA Towers' appeal of the ZHB's approval

---

Record (R.R.) at 108a-20a.) SBA Towers contends, however, and we agree, that the ZHB did not identify whether it was evaluating the Application as a request for a special exception or a request for a use variance. In fact, there appears to be some disagreement as to whether the ZHB was required to consider the Application as a request for a special exception under Sections 501(2) and 1001(A)(9) of the Ordinance or a request for a use variance under Section 1108(1) of the Ordinance. (*See* ZHB Decision at 2; *see also* SBA Towers' Br. at 4, 9-21.) Common pleas appears to have considered the Application as a request for a use variance. (*See* Common Pleas' Op. at 7.) On remand, common pleas must identify whether it is evaluating the Application as a request for a special exception or a request for a use variance, specifically explaining its reasons for doing so, and then apply the relevant provisions of the Ordinance and the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202, as explained more fully below.

3

of the Application. Cognizant of its standard of review given that it took additional evidence, common pleas made the following relevant findings of fact:

23. [Verizon] provides commercial mobile radio services, personal and advanced wireless services, and other telecommunications services . . . in the Commonwealth of Pennsylvania [(Commonwealth)], including in the Township and surrounding areas.

24. Tarpon constructs, owns, and manages wireless communications facilities in [the Commonwealth] and elsewhere in the country.

25. Similar to SBA [Towers], Tarpon leases space on its facilities to national and regional wireless carriers who [sic] provide personal and advanced wireless services, as well as other telecommunications services . . . .

26. In providing valuable service to wireless carriers, Tarpon is facilitating the development and deployment of advanced wireless and broadband connectivity consistent with the goals of the [Telecommunications Act of 1996 (TCA), 47 U.S.C. §§ 151-624, 641-646], which governs federal, state and local government regulation of the siting of personal wireless service facilities. 47 U.S.C. § 332(c)(7)(B).

27. Tarpon also leases space on its facilities to federal, state, and local first responders, law enforcement, and public safety agencies.

28. [Verizon] is seeking to facilitate the maintenance and development of a wireless telecommunications network in keeping with the goals of the TCA.

29. [Verizon] uses licenses issued by the Federal Communications Commission [(FCC)] pursuant to 47 U.S.C. § 151 to provide wireless service in the Township.

30. Section 151 of the TCA establishes a national policy to "make available,[] so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, nationwide, and worldwide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. [§] 151. To meet these policy goals, [Verizon] seeks

4

to provide a myriad of wireless services to local businesses, public safety entities and the general public.

31. Likewise, to advance the national policies enumerated under 47 U.S.C. § 151 and repeatedly reiterated by the FCC, Tarpon constructs towers and other wireless facilities that allow wireless carriers, such as [Verizon], to create and maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals.

32. To provide reliable service to a user, coverage from cell sites must overlap in a grid pattern resembling a honeycomb. If Tarpon is unable to construct a cell site within a specific geographic area, the wireless carriers it serves, such as [Verizon], will not be able to provide service to the consumers within that area.

33. Because the communications tower is proposed to be located in the Business [D]istrict (a district where towers are not provided for under the . . . Ordinance), [Tarpon and Verizon] were required to demonstrate compliance with the TCA.

34. Tarpon demonstrated compliance with the TCA through its project narrative and corresponding exhibits, as well as uncontroverted expert testimony.

. . . .

48. Consistent with the . . . Ordinance, [Verizon's] radio frequency design manager, Jim Rickard, provided substantial evidence and testimony that no collocation opportunities exist within a quarter-mile radius of the proposed communications tower.

49. [Tarpon and Verizon] provided substantial evidence and testimony that [Verizon's] antennas are located on [the SBA Tower].

50. In previous attempts to provide a reliable wireless signal to [the] Township, [Verizon] partnered with [SBA Towers] to attach antennas to SBA's [T]ower. However, since approximately November 2015, [Verizon] has been unable to guarantee reliable wireless service from the SBA [T]ower.

51. [Verizon] project manager, Melissa Haluszczak, oversees property management issues in [Verizon's] Ohio, Pennsylvania, and West Virginia . . . market.

5

52. Ms. Haluszczak explained that a cell tower is typically located within a fenced compound. Adjacent to the base of the tower is an equipment shelter that houses the ground[-]based equipment which service each wireless provider attached to the tower. The equipment shelters are visited routinely by technicians to perform routine maintenance.

53. [Verizon] technicians and contractors informed Ms. Haluszczak that they repeatedly were denied access to the SBA [T]ower to perform air conditioning upgrades and other innumerable maintenance needs at the facility.

54. Ms. Haluszczak testified that 24-7 access to cell sites is critical for wireless providers to propagate a reliable signal.

55. 24-7 access to a cell site is critical to a wireless provider's ability to maintain a reliable signal. This need is especially critical given that approximately 80% of 911 calls originate from a cell phone.

56. [Mr.] Rickard stated that moving from [the] SBA [T]ower to Tarpon's [proposed] tower would help [Verizon] maintain its coverage in the area, as well as allow for the needed expansion to handle technological upgrades at their sites, which include larger antennas, radio transmitters on the ground, while also having the ability to maintain their facilities. Consequently, Mr. Rickard concluded that [the] SBA[ T]ower cannot accommodate [Verizon's] existing or future needs.

(Common Pleas' Op. at 8-14.) Based upon those findings of fact and its own independent review of the evidence, common pleas concluded:

[This court] agree[s] with [Tarpon's] and the [ZHB's] positions on this litigation. [This court] believe[s] that [Tarpon] presented sufficient evidence that granting [the A]pplication would help [Verizon] maintain its coverage in the area. Importantly, [this court] also believe[s] that the testimony provided that the granting of the [A]pplication would allow for needed expansion to handle technological upgrades and that the [SBA Tower] would not allow for them to maintain coverage in the same manner nor would it provide for the ability to accomplish the needed expansion to handle technological upgrades. Therefore, this [c]ourt finds that the [ZHB] did not error [sic] in granting the [A]pplication.

6

(Common Pleas' Op. at 17.)  SBA Towers thereafter appealed common pleas' decision and order to this Court.[4]

On appeal,[5] SBA Towers argues that common pleas committed an error of law and/or abused its discretion by affirming the ZHB's decision to grant the Application because:  (1) neither the ZHB nor common pleas provided sufficient findings of fact or an adequate explanation to support a conclusion that Tarpon and Verizon satisfied the criteria necessary for the grant of a use variance; (2) neither the ZHB nor common pleas provided sufficient findings of fact or an adequate explanation to support a conclusion that Tarpon and Verizon satisfied the requirements necessary for the grant of a special exception; and (3) the TCA does not "trump" local zoning regulations.  Stated another way, SBA Towers contends that the ZHB and common pleas were not required to approve the Application based solely upon an alleged gap in Verizon's coverage.  Rather, the ZHB and commons pleas were required to consider whether Tarpon and Verizon satisfied all of the requirements set forth in the Ordinance and the MPC for a special exception or a use variance and thereafter deny the Application if such requirements were not satisfied.[6]  In response, Tarpon

---

[4] On June 24, 2020, following the submission of SBA Towers' concise statement of errors complained of on appeal, common pleas issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(a).  In that Rule 1925(a) opinion, common pleas noted that, with one possible exception relative to access to the SBA Tower, its March 30, 2020 opinion addressed the reasons for its decision, and, therefore, it incorporated its March 30, 2020 opinion into its Rule 1925(a) opinion.

[5] Given that common pleas took additional evidence in this case and considered the matter *de novo*, this Court's standard of review "is confined to determining whether [the common pleas court] abused its discretion or committed an error of law."  *Bd. of Supervisors of Upper Merion Twp. v. Wawa, Inc.*, 505 A.2d 645, 646 (Pa. Cmwlth. 1986).

[6] SBA Towers, without consideration of the effect of common pleas' decision to accept additional evidence, also argues that the ZHB committed an error of law by relying upon evidence outside of the record relative to a former communications tower application.  Given that we are
**(Footnote continued on next page…)**

7

contends that common pleas properly affirmed the ZHB's decision granting the Application, because Tarpon and Verizon presented substantial evidence to establish compliance with the TCA—*i.e.*, Tarpon and Verizon established that there is a significant gap in the ability of remote users to access the national telephone network and that the proposed communications tower is the least intrusive means of remedying such gap.

"Section 332(c)(7) of the [TCA] places limitations on the general authority of state or local governments or instrumentalities thereof to make 'decisions regarding the placement, construction, and modification of personal wireless service facilities.'" *Liberty Towers, LLC v. Zoning Hearing Bd. of Lower Makefield, Bucks Cnty., Pa.*, 748 F. Supp. 2d 437, 441 (E.D. Pa. 2010) (quoting 47 U.S.C. § 332(c)(7)(A)). Despite these limitations, however, Section 332(c)(7) also preserves the state and local governments' authority to regulate zoning. It provides, in pertinent part:

> (7) Preservation of local zoning authority
>
> > (A) General authority
> >
> > Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a [s]tate or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
> >
> > (B) Limitations

---

reviewing common pleas' opinion and order, not the ZHB's decision, we will not address this argument. SBA Towers further argues that the basis for the allegation of a gap in Verizon's coverage—*i.e.*, Verizon's lack of access to the SBA Tower—was resolved by the Pennsylvania Superior Court in *SBA Towers II LLC v. Wireless Holdings, LLC*, 231 A.3d 901 (Pa. Super.), *appeal denied*, 240 A.3d 105 (Pa. 2020). Given our disposition of this matter, we need not address this issue. We note, however, that the effect of the Superior Court's decision on the Application, if any, is something that can be addressed by the ZHB and/or common pleas on remand.

> (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any [s]tate or local government or instrumentality thereof—
>
>> (I) shall not unreasonably discriminate among providers of functionally equivalent services; and
>>
>> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7).

This Court recently considered the meaning and scope of the limitation set forth in Section 332(c)(7)(B)(i)(II) of the TCA and whether such provision preempts the MPC and/or local zoning regulations with respect to the placement of communications towers in *Fairview Township v. Fairview Township Zoning Hearing Board*, 233 A.3d 958 (Pa. Cmwlth. 2020) (en banc). In *Fairview Township*, the applicant submitted two separate variance applications to the local zoning authority, seeking approval to construct wireless telecommunications facilities at two separate properties. Following a hearing, the local zoning authority granted the applicant's variance requests. The township appealed the local zoning authority's decision to the court of common pleas. After reviewing the matter *de novo*, the court of common pleas found that the applicant had satisfied all of the elements necessary for a variance with respect to one of the properties but had failed to satisfy three out of the five elements necessary for a variance with respect to the other property. Nonetheless, the court of common pleas granted the variance requests for both properties, because it concluded that the TCA prohibited the denial of the variance requests under the circumstances. The township appealed to this Court, and we reversed. In so doing, we concluded that the TCA does not preempt the MPC and/or local zoning regulations, but rather permits a local zoning authority to deny an application for the construction of a communications tower if there is a *bona fide* local zoning concern. We reasoned:

9

In applying [Section 332(c)(7)(B)(i)(II)] of the TCA, the [court of common pleas] framed the issue as whether the provider must prove: (1) that there is a significant gap in service to remote users *that was not being serviced by another provider*, *i.e.*, the "one provider" rule, as set forth in *APT [Pittsburgh Limited Partnership v. Penn Township Butler County of Pennsylvania*, 196 F.3d 469 (3d Cir. 1999)]; or (2) that there is a significant gap in service in any area *for that particular service provider*. The [court of common pleas] noted that, in 1999, the [United States Court of Appeals for the] Third Circuit [(Third Circuit)] adopted the "one provider" rule, but that other federal circuits have reached opposite conclusions and require a provider to show only *a gap in its own service*. The [court of common pleas] noted that "[i]n response to this 'circuit split,' the FCC in 2009 issued its Declaratory Ruling[,]" wherein it rejected the "one provider" rule in favor of a standard that requires a provider to show a gap in its own service rather than a showing that the area is not already served by another provider. The [court of common pleas] stated that although the Third Circuit has not yet addressed the FCC's 2009 Declaratory Ruling, the [United States District Court for the] Eastern District of Pennsylvania has concluded this Ruling is entitled to deference. Accordingly, the [court of common pleas] determined that the FCC's 2009 Declaratory Ruling was entitled to deference and stated that it was adopting the rule, as set forth and adopted in *Liberty Towers*, "that a significant gap in service must exist in an area only for that particular service provider." Additionally, in its subsequent [Rule] 1925(a) opinion, the [court of common pleas] stated that, pursuant to the FCC's 2018 Declaratory Ruling, the relevant inquiry is no longer limited to just a gap in service for a particular provider, but also includes a particular service provider's efforts to densify, expand or otherwise improve its existing service capabilities.

The [t]ownship, however, argues that if a provider need only show a gap in its coverage in order to obtain a variance, then any wireless provider without a presence in a particular location could apply for a variance and construct a cellular communications tower anywhere it desires by merely establishing it does not have a presence in the area, without having to establish the requirements for a variance and without any regard for zoning, the MPC[,] or the neighborhood. The [t]ownship contends that the TCA must be read in conjunction with the MPC and its hardship requirements and that the TCA does not "trump" the MPC with respect to the placement of wireless telecommunications towers. The [t]ownship asserts the TCA expressly preserves a local municipality's ability to zone where towers are placed.

Notably, simply looking at the question of whether a service provider has a gap in its coverage (or is attempting to densify, expand or otherwise improve its existing service) is not the entirety of the FCC's ruling on what constitutes a prohibition or effective prohibition. Significantly, in rejecting the "one provider" rule, the FCC's 2009 Declaratory Ruling states, "it is a violation of Section 332(c)(7)(B)(i)(II) [of the TCA] for a [s]tate or local government to deny a personal wireless service facility siting application *solely because* that service is available from another provider." Additionally, the FCC stated, "where a *bona fide* local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by our ruling today." Accordingly, given this language in the FCC's 2009 Declaratory Ruling, we agree with the [t]ownship that the TCA does not "trump" the MPC with respect to the placement of wireless telecommunications towers.

Despite quoting the "solely because" language from the FCC's ruling in its opinion, the [court of common pleas], in concluding that an applicant need establish only a gap or other deficiency in its own coverage in order to establish entitlement to a variance, took the FCC's statement out of context and did not consider the entirety of the FCC's statement as to what constitutes a prohibition or effective prohibition. This was error. The FCC's 2009 Declaratory Ruling directs us to look at what "drives" the zoning decision or, in other words, on what the decision is based.

Here, the denial of the variances is not "solely because" the service is available from another provider but, rather, is based on a *bona fide* local zoning concern. Indeed, with respect to the [first p]roperty, the [court of common pleas] found that [the applicant] failed to establish three of the five elements necessary for a variance. Specifically, the [court of common pleas] found that [the landowner's] purpose of entering into the lease with [the applicant] to construct the telecommunications tower was to earn additional revenue and that, therefore, the unnecessary hardship criterion was not satisfied. The [court of common pleas] also found that there were no unique physical circumstances or conditions of the [first] property causing unreasonable hardship. In fact, the [court of common pleas] noted that [the landowner] is presently making reasonable use of the [first p]roperty and has been doing so in excess of 20 years. Lastly, the [court of common pleas] found that any unnecessary hardship was self-inflicted because [the landowner] agreed to subdivide the [first p]roperty and, as a result, needed dimensional variances.

11

These reasons have nothing to do with whether service is available from another provider or whether [the wireless service provider] needed to densify, expand or otherwise improve its network. Consequently, the denial of the variances pursuant to the MPC was not based *solely* on the presence of other providers or the existence of some coverage by [the wireless service provider]. The decision with respect to the [first p]roperty was based on a *bona fide* local zoning concern, *i.e.*, a lack of unique physical circumstances or conditions that cause an unnecessary hardship and any hardship was self-inflicted.

Additionally, we have determined, contrary to [the court of common pleas'] decision, [that the applicant] failed to establish the requisite hardship to entitle it to a variance for the [second p]roperty. This, too, is a *bona fide* local zoning concern and has nothing to do with whether service is available from another provider or whether [the applicant] needs to densify, expand or otherwise improve its network.

In short, the presence of other carriers, or the condition of [the wireless service provider's] coverage, did not play a role in the variance determinations for either [property]. Thus, because the prohibition of services here was not based "solely on the presence of another carrier" and because "a *bona fide* local zoning concern, rather than the mere presence of other carriers, drives [this] zoning decision," the decision to deny the variances does not "prohibit" or "effectively prohibit" the provision of wireless services in contravention of the TCA and, therefore, "should be unaffected by [the FCC's] ruling." Indeed, we have stated that "[n]ot every municipality's denial of an application to build a wireless facility violates the TCA."

The effect of the [court of common pleas'] application of the TCA is that simply because a gap in [the wireless service provider's] coverage exists, and the proposed towers are the least intrusive way to remedy the gap, [the applicant] is entitled to the variances. However, this application of the TCA completely ignores the FCC's mandate that where a *bona fide* local zoning concern drives the decision, it is unaffected by the FCC's ruling. There is a difference between: (1) mandating the granting of an application for a cell tower simply because a provider has a significant gap in coverage and has proposed the least intrusive means to remedy it; and (2) prohibiting the denial of an application solely on the basis that another provider is covering an area. The two are not the same. The FCC's ruling does only the latter; however, the [court of common pleas'] ruling follows the former, apparently believing this to be the effect of the FCC's ruling. Application of the former would mean that a provider could

12

place a tower wherever it pleases so long as it establishes a significant gap in its coverage (or a desire to densify, expand, or otherwise improve its network) and has proposed the least intrusive means to remedy it. Application of the latter means that a state or local regulatory authority cannot deny an application based solely on the fact that another provider provides coverage or that there is coverage in the area. Moreover, under the [court of common pleas'] interpretation of the TCA, authorizing a cell tower simply because a provider has a gap in coverage, or needs to expand, densify or otherwise improve its coverage, effectively means that the insufficiency in coverage is a hardship entitling the provider to a variance. This cannot be the case, however, as such a "hardship" is an economic hardship. The hardship must be to the property, not the person.

Our interpretation is supported by the FCC's own statements explaining its 2009 Declaratory Ruling, in which the FCC repeatedly stated that its ruling does not affect zoning decisions based on grounds other than the presence of another carrier. For example, the FCC explained, "[o]ur actions herein will not preempt [s]tate or local governments from reviewing applications for personal wireless service facilities['] placement, construction, or modification" and that, "pursuant to the authority Congress reserved to [state or local governments] in Section 332(c)(7)(A) [of the TCA,] . . . they may deny such applications if the denial is "supported by substantial evidence contained in a written record." The FCC's 2009 Declaratory Ruling also stated:

> As explained below, however, our interpretation of the statute does not mandate such approval and therefore does not strip [s]tate and local authorities of their Section 332(c)(7) zoning rights. Rather, we construe the [TCA] statute to bar [s]tate and local authorities from prohibiting the provision of services of individual carriers solely on the basis of the presence of another carrier in the jurisdiction; [s]tate and local authority to base zoning regulation on other grounds is left intact by this ruling.

The FCC again noted that its ruling preserves state and local authority to reasonably regulate, stating:

> Our determination also serves the [TCA's] goal of preserving the [s]tate and local authorities' ability to reasonably regulate the location of facilities in a manner that operates in harmony with federal policies that promote competition among wireless providers.

13

As we indicated above, *nothing we do here interferes with these authorities' consideration of and action on the issues that traditionally inform local zoning regulation. Thus, where a bona fide local zoning concern, rather than the mere presence of other carriers, drives a zoning decision, it should be unaffected by our ruling today.*

Additionally, the FCC's subsequent 2018 Declaratory Ruling reaffirmed the role of state and local governments in land use and zoning matters. The FCC stated that its ruling "ensures that state and local elected officials will continue to play a key role in reviewing and promoting the deployment of wireless infrastructure in their communities." The FCC added:

our interpretation remains faithful to the purpose of Section 332(c)(7) [of the TCA] to balance Congress's competing desires to preserve the traditional role of state and local governments in regulating land use and zoning, while encouraging the rapid development of new telecommunications technologies. Under our interpretation, states and localities retain their authority over personal wireless facilities deployment.

The TCA's purpose is to promote competition, not to take over or completely preempt the state and local authority to regulate zoning. The Third Circuit has stated, "Congress enacted the TCA to provide 'a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition.'" The TCA "was intended to promote competition by limiting the ability of local authorities to regulate and control the expansion of telecommunications technologies." The TCA "strikes a balance between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers."

For the foregoing reasons, the [court of common pleas] erred in concluding that the variances had to be granted merely because a gap in [the wireless service provider's] coverage existed. The subject denials were not based solely upon another provider's ability to provide coverage in the gap or based upon [the wireless service provider's] existing coverage, but, rather, were based upon a lack of hardship.

*Id.* at 967-72 (emphasis in original) (footnotes omitted) (citations omitted).

14

Here, it appears that both the ZHB and common pleas granted the Application because they believed that the TCA required them to do so under the circumstances. In other words, the ZHB and common pleas granted the Application based solely on the existence of an alleged gap in Verizon's coverage and never considered whether Tarpon and Verizon had satisfied all of the elements necessary under the Ordinance and/or the MPC for a special exception or use variance—*i.e.*, whether a *bona fide* local zoning concern existed. This constitutes error. *See Fairview Twp.*, 233 A.3d at 967-72. In deciding whether to grant the Application for the construction of the communications tower at the Property, the ZHB and common pleas were required to consider not only whether Tarpon and Verizon met the requirements of the TCA, but also whether Tarpon and Verizon met the requirements of the Ordinance and the MPC for a special exception or a use variance. Because they did not do so, we must conclude that common pleas committed an error of law by affirming the ZHB's decision.

Accordingly, we vacate common pleas' order and remand the matter to common pleas to issue a new decision and order consistent with this opinion.

P. KEVIN BROBSON, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

SBA Towers II, LLC,            :
              Appellant     :
                            :
           v.               :     No. 440 C.D. 2020
                            :
Zoning Hearing Board of        :
Logan Township               :
                            :
           v.               :
                            :
Tarpon Towers II, LLC         :

# **O R D E R**

AND NOW, this 22nd day of January, 2021, the order of the Court of Common Pleas of Blair County (common pleas) is hereby VACATED, and the above-captioned matter is REMANDED to common pleas to issue a new decision and order consistent with the attached opinion.

Jurisdiction relinquished.

 

                                    _____

                                    P. KEVIN BROBSON, Judge